Karl E. STIEGELE, Speidel Corporation and Kingsway Company, Plaintiffs,

v.

BENTLEY & SCHIBELLE TRADING CO., an Arizona corporation, and Langert Bros. Co. Wholesale Jewelry & Supplies, an Arizona corporation, Defendants.

Civ. No. 3028 PHX.

United States District Court
D. Arizona.

March 22, 1960.

Fennemore, Craig, Allen & McClennen, Phoenix, Ariz., Dike, Thompson & Bronstein, Boston, Mass., for plaintiffs.

William Rogers, Jr., for defendant.

BOLDT, District Judge.

The above entitled cause having come on for trial on the 4th day of March, 1960, upon the complaint as amended and the answer, the plaintiffs, appearing by their attorneys of record, and defendant, Bentley & Schibelle Trading Co., appearing by its attorney, William Rogers, Jr., evidence was adduced on behalf of plaintiffs and on behalf of said defendant, Bentley & Schibelle Trading Co., and the cause was submitted to the Court on the 5th day of March, 1960, and the Court being now fully advised finds the following facts:

## FINDINGS OF FACT

1. This is an action for patent infringement and unfair competition based upon Bentley & Schibelle Trading Co.'s use, sale, exposure for sale and inducement of others to use, sell and expose for said "LAMP" expansible watch bracelets numbered 909, 910, 917, 929, 701, 706, and 707, all of which are alleged to infringe claims 1, 2, and 5 to 9, inclusive, of United States Patent 2,689,450, and one of which, No. 929, is alleged to be an unprivileged imitation or copy of the distinctive, non-functional physical appearance of plaintiffs' design Kingsway bracelet.

2. On September 21, 1954, United States Patent No. 2,689,450 was duly and legally issued to the plaintiff, Karl E. Stiegele (hereinafter called Stiegele), who then was and still is a citizen of the Federal Republic of Germany, residing at Weissensteiner Str. 20, Huchenfeld near Pforzheim, Baden, Germany.

3. Stiegele has owned the legal title to the patent in suit (hereinafter called the Stiegele patent) continuously since said date of issue.

4. Plaintiff, Speidel Corporation (hereinafter called Speidel), is a Rhode Island corporation having its place of business at Providence, Rhode Island. It has been engaged in the manufacture and sale of expansible watch bracelets continuously since prior to 1934, and in the manufacture and sale of bracelets made under the Stiegele patent continuously since May of 1956.

5. On June 1, 1953, Stiegele granted to Speidel an exclusive license under the Stiegele patent when issued, to make, use and sell in the United States, its territories and possessions, expansible bracelets embodying the inventions covered by the patent. That license was amended as of January 1, 1954, and since then Speidel has been obligated to pay Stiegele a royalty of 3¢ per bracelet sold by it or by any of its sublicensees thereunder.

6. Plaintiff, Kingsway Company (hereafter called Kingsway Co.), is a Rhode Island corporation having its place of business at Providence, Rhode Island, and it is a wholly owned subsidiary of Speidel. It is a sales corporation, purchasing the patented Kingsway bracelets from Speidel and reselling them to wholesale jewelers throughout the country. It commenced volume sales thereof in June of 1956.

7. The Kingsway bracelet has been made and sold in just two designs, the "plain" Kingsway and the "design" Kingsway, specimens of the latter being in evidence as Plaintiffs' Exhibits 2 and 2–B.

8. Forstner, Inc., of Irvington, New Jersey, is the only sublicensee under the Stiegele patent; it was licensed as of March 1, 1956; and it pays Speidel royalties of five per cent (5%) of its sales price of bracelets made and sold by it under the patent.

9. Speidel and Forstner, Inc., have complied with the statutory patent notice requirements by marking all of the patented articles or the cards upon which they were sold "PAT 2,689,450"; Speidel since its first sale and Forstner since March 30, 1956.

10. The defendant, Langert Bros. Co. Wholesale Jewelry & Supplies (hereafter called Langert), is an Arizona corporation engaged in the wholesale jewelry business with its place of business in Phoenix. It consented to a final judgment which was entered herein on October 26, 1959, and, accordingly, it was not represented at the trial which occurred March 3 and 4, 1960.

11. The defendant, Bentley & Schibelle Trading Co. (hereafter called Bentley & Schibelle), is an Arizona corporation incorporated in March, 1958, as the successor to a partnership of the same name which consisted of Harold C. Bentley, then of East Jack Rabbit Road, Scottsdale, and Herbert E. Schibelle of East Colter Street, Phoenix, as partners. These two men are the only persons connected with Bentley & Schibelle who were responsible for the acts of use, sale, exposure for sale and inducement which are charged to constitute patent infringement and unfair competition in this action.

12. The issues are:

A. Are claims 1, 2, and 5 to 9, inclusive, of the Stiegele patent for an original invention and valid under the patent laws of the United States?

B. Were claims 1, 2, and 5 to 9, inclusive, of the Stiegele patent issued pursuant to the requirements of the patent laws of the United States?

C. Does the design of the LAMP bands infringe upon any valid claims of the Stiegele patent?

D. Does the construction of the LAMP bands infringe upon any valid claims of the Stiegele patent?

E. If so, what is the amount of plaintiffs' damages?

F. If Bentley & Schibelle's acts amounted to an infringement in any respect, were those acts wilful?

G. Did any of the acts of Bentley & Schibelle constitute unfair competition?

H. If so, what is the amount of plaintiffs' damages?

13. This Court has jurisdiction of the cause of action for patent infringement under 28 U.S.C.A. §§ 1338(a) and 1400, and jurisdiction of the cause of action for unfair competition under 28 U.S.C.A. § 1338(b) because the acts of alleged unfair competition flow from and are inseparably connected with the acts of alleged patent infringement.

14. April 10, 1951, is the effective filing date of the application for the Stiegele patent under the provisions of 35 U.S.C.A. § 119, because, as appears from pages 28 to 32, inclusive of the file wrapper and contents of the application for the Stiegele patent (Plaintiffs' Exhibit 24), on July 10, 1953, Stiegele filed a request for priority and a certified copy of the corresponding German application, the filing date of which was April 10, 1951.

15. The Stiegele patent is for an expansible linkage which is sold in the form of a watch bracelet. In use the watch bracelet is attached to a wrist watch and it is manually expanded or stretched when the bracelet and the watch are slipped over the hand of the user. When they have been slipped over the hand of

the user and encircle the wrist, the stretching force is released and the bracelet automatically contracts so as to resiliently grip the wearer's wrist and hold the wrist watch in position on it.

16. When a watch and bracelet are removed from the wrist the bracelet is grasped between the thumb and forefinger of one hand to hold the bracelet while it is stretched and pulled over the hand and the sliding of the watch over the hand is retarded by friction between the back of the watch and the back of the hand so that the bracelet has a natural tendency to twist. This twisting action is a combination of lateral and vertical flexures of the bracelet and unless a watch bracelet is highly flexible, both laterally and vertically, to provide twisting flexibility, such removal of the bracelet and watch from the wrist causes undue strains to be exerted upon the parts of the bracelet and its useful life is limited.

17. Due to its new and unique construction, the bracelet of the Stiegele patent has extremely high degrees of vertical, lateral and twisting flexibilities during simultaneous expansion or contraction, and it is much more durable in use than any prior art expansible bracelet. It is also simple and economical to manufacture, its length can be adjusted at the point of sale and it has a more attractive appearance than many prior art expansible bracelets because it remains of the same width and no through gaps open up between the links when it is expanded.

18. The gist of the Stiegele invention of claim 9 of the Stiegele patent is a construction in which the links are arranged in two rows of overlapping, staggered links, each link of one row is connected to two links of the other row by four rigid U-shaped connecting members, one pair at each side of the linkage, the legs of the connecting members are wider than they are thick with the wider sides extending lengthwise of the linkage and a single leaf spring is in each link with its ends resiliently supporting and exerting pressure against the wider sides of the four legs in each link, the links,

springs and legs of the connecting members all extend generally at right angles to the longitudinal center line of the linkage and although the legs are fixedly spaced from one another by the bases of the U's, they are floating in the links and free to push against the springs during expansion and all forms of flexing of the linkage. Due to such leaf spring, link, U-shaped connecting member arrangement—an arrangement of floating connections, involving simply pushing against the ends of the leaf springs— no appreciable pressures or strains are imposed upon any of the parts during normal use of the bracelet and the result is greatly increased durability and high twisting flexibility.

19. When the Stiegele bracelet on a watch is slipped off the hand as it twists, the ends of the springs are depressed in different amounts in different links, the legs of the connecting members turn within the links in different amounts and the legs are resiliently supported at all times by the springs and this unique construction and action provide new, unexpected and surprising functions and results of high flexibility and great durability which are due to the co-action of connecting member legs, leaf springs and links which are all substantially parallel to each other and extend substantially at right angles to the longitudinal center line of the linkage.

20. Plaintiffs' Kingsway bracelet is like the bracelet shown in the drawings of the Stiegele patent except (1) the links are rectangular in cross section rather than oval, (2) the legs of the U-shaped connecting members are substantially rectangular in cross section throughout their length and do not have the semicircular portion shown in Fig. 1 of the patent, and (3) the bottom links are narrower in cross section than the top links to prevent hair pinching. The high degree of twisting flexibility and the unique action referred to in finding 19 is demonstrated by tying a Kingsway bracelet in a knot.

21. The following thirty-five prior art patents are in evidence in Plaintiffs' Ex-

hibit 27, they include all patents which were cited by the United States Patent Office against the application for the Stiegele patent and the most pertinent patents cited by infringers in other cases:

| Patent No. | Country | Issued To | Date Issued |
|---|---|---|---|
| 310,035 | United States | Easton | Dec. 30, 1884 |
| 395,454 | United States | Prahar | Jan. 1, 1889 |
| 728,741 | United States | Mason | May 19, 1903 |
| 738,039 | United States | Hoffman | Sept. 1, 1903 |
| Re. 12,294 | United States | Mason | Dec. 13, 1904 |
| 781,969 | United States | Sommer | Feb. 7, 1905 |
| 870,077 | United States | Bennett | Nov. 5, 1907 |
| 886,121 | United States | Giguere | Apr. 28, 1908 |
| 45,678 | Switzerland | Kuttroff & Volz | Nov. 4, 1908 |
| 1,032,369 | United States | Baxter | July 16, 1912 |
| 1,140,677 | United States | Hadley | May 25, 1915 |
| 1,205,287 | United States | Tesoroni | Nov. 21, 1916 |
| 1,240,810 | United States | Baxter | Sept. 25, 1917 |
| 1,426,884 | United States | Levy | Aug. 22, 1922 |
| 1,630,498 | United States | Person | May 31, 1927 |
| 1,670,132 | United States | Augenstein | May 15, 1928 |
| 1,712,564 | United States | Jones | May 14, 1929 |
| 1,740,894 | United States | Johnson | Dec. 24, 1929 |
| 503,650 | Germany | Benrus | July 25, 1930 |
| 2,059,582 | United States | Jurewitz | Nov. 3, 1936 |
| 1,831,951 | United States | Fassnacht, et al. | Nov. 17, 1931 |
| 2,180,980 | United States | Fassnacht, et al. | Nov. 21, 1939 |
| 2,249,086 | United States | MacIntosh | July 15, 1941 |
| 2,259,542 | United States | Bellavance | Oct. 21, 1941 |
| 2,267,967 | United States | Augenstein | Dec. 30, 1941 |
| 2,267,968 | United States | Augenstein | Dec. 30, 1941 |
| 2,302,426 | United States | Domler | Nov. 17, 1942 |
| 2,334,622 | United States | Greenberg | Nov. 16, 1943 |
| 2,388,554 | United States | Kreisler | Nov. 6, 1945 |
| 2,430,776 | United States | Miller | Nov. 11, 1947 |
| 935,687 | France | Chatenoud | June 28, 1948 |
| 251,199 | Switzerland | Desfourneaux | Aug. 2, 1948 |
| 2,513,288 | United States | Cowan | July 4, 1950 |
| 2,528,568 | United States | Williams | Nov. 7, 1950 |
| 2,713,766 | United States | Saccone | July 26, 1955 |

22. The thirty-five patents in Plaintiffs' Exhibit 27, taken either singly or in combination, do not disclose or suggest the Stiegele inventions as defined by the claims in suit.

23. The differences between the subject matter patented by the Stiegele patent claims in suit and said thirty-five prior art patents are such that the subject matter of the said patent claims as a whole would not have been obvious to a person having ordinary skill in the expansible linkage art in 1951.

24. A new and unique expansible linkage was provided by the unification of the elements described by each of the

seven claims of the Stiegele patent which are involved in this action, the coaction of these elements produces high flexibility and vastly improved durability, the Stiegele bracelet was a great advance in the expansible linkage art and required the exercise of a high degree of the inventive faculty.

25. In June of 1959, Speidel commenced the sale of another embodiment of the Stiegele bracelet called "TWIST-O-FLEX" and a specimen is in evidence as Plaintiffs' Exhibit 11. It is like the Kingsway bracelet except that tabs are provided upon the ends of the links to conceal the connecting members and to hold the connecting members in the links, and the leaf springs have slightly sharper bands. It bears the Speidel name and is sold by Speidel directly to wholesale jewelers and not to Kingsway Co.

26. The following five expansible watch bracelets were sold commercially in this country prior to 1951, and they represent the prior art expansible linkages which were made and sold by U. S. manufacturers as distinguished from the paper patent prior art:

A. The X or lazy tongs construction which goes back to at least 1907, the date of Bennett Patent No. 870,077; Speidel's Crossfire bracelet, Plaintiffs' Exhibit 13; and its Golden Knight bracelet, Plaintiffs' Exhibit 32 are examples.

B. The Hadley construction which goes back to at least 1915, the date of Hadley Patent No. 1,140,677; Speidel's Tapered Star bracelet, Plaintiffs' Exhibit 29, is an example.

C. The rectangular box construction which goes back to at least 1928, the date of Augenstein Patent 1,670,132; Speidel's Lizard Links bracelet, Plaintiffs' Exhibit 14, is an example.

D. The Z or two pivot construction which goes back to at least 1941, the date of Augenstein Patents 2,267,967 and 2,267,968; Speidel's Raindrop and Mignonette bracelets, Plaintiffs' Exhibits 16 and 31 are examples.

E. The ladies' tubular construction which goes back to at least 1942, the date of Domler patent 2,302,426; Speidel's Golden Autumn bracelet, Plaintiffs' Exhibit 15, is an example.

27. All of the five above prior art constructions of finding 26 use coil springs to contract the links after the bracelet is stretched, and they all have fixed axis pivots upon which undue strains or forces are exerted when the bracelet is simultaneously expanded and twisted during removal of the watch from the wrist of the wearer.

28. The improved durability accomplished by the Stiegele invention has been proved in two ways, first by spring fatigue tests (Plaintiffs' Exhibits 12 and 17), and second, by a comparison of sales and returns for repairs (Plaintiffs' Exhibits 28 and 33), of four of the five [1] above-identified prior art constructions (A, C, D and E of finding 26) and the Kingsway and TWIST-O-FLEX bracelets. During the first three years of sale of the Kingsway bracelet, only 0.25% were returned for repair due to failure or breakage of the working parts, whereas 1.23% of the strongest prior art bracelet (the Crossfire lazy tongs) and 3.18% of the weakest prior art bracelet (the ladies' tubular) were returned for repair during corresponding three year periods. From a return for repair standpoint, only one-fifth as many Kingsway and TWIST-O-FLEX bracelets are returned for repair compared to the returns for repair of the strongest prior art expansible bracelet, namely, the Crossfire lazy tongs construction (see Plaintiffs' Exhibits 28 and 33).

1. The construction of the fifth (B of finding 26), namely, the Hadley patent, is very similar to item C but weaker because the compression springs are smaller. It was not tested because it was not being marketed by Speidel when the tests were made.

29. The prior art bracelets lack the great durability of Stiegele because with each of them, due to the pressure of fixed axis pivots or the manner in which the links are connected to hold them together, the pivots or link connecting means are strained and broken or bent after a relatively short period of use and require returning the bracelets to the manufacturer for repairs. The prior art bracelets fail much sooner than the Stiegele bracelet for another reason, the coil springs used in them break after many, many fewer expansions and contractions of the bracelet than do the leaf springs incorporated in the particular leaf spring, connector legs and link arrangement of the Stiegele patent (see Plaintiffs' Exhibit 17).

30. Lack of durability and the resultant necessity of returning expansible bracelets for repairs has been recognized as a serious problem since at least as early as 1934. Customers expect an expansible watch bracelet to last a reasonable time without requiring repairs and if it requires repairs too soon, the manufacturer's good will suffers. Consequently, to prevent loss of good will, manufacturers uniformly repair expansible bracelets at a loss to themselves. I or example, Speidel loses about 42¢ per bracelet which it repairs.

31. The Stiegele construction has filled the long-felt need or want for a more durable expansion bracelet, a need or want which was well recognized and unfilled since prior to 1934.

32. The Stiegele construction as made in this country by Speidel has enjoyed very extensive commercial success. From May of 1956, to March 1, 1959, Kingsway Co. sold about 300,000 Kingsway bracelets for a total of about $488,000 (Plaintiffs' Exhibit 3-B). These sales were made under the previously unknown name, Kingsway, with only one trade paper advertisement which was published in 1956 and with bracelets supplied in only two designs, the plain Kingsway and the design Kingsway. During the eight months' period from June 1, 1958, through January 31, 1959, Speidel sold a total of 618,589 men's watch bracelets (Plaintiffs' Exhibit 34). During the eight months' period from June 1, 1959, through January 31, 1960, Speidel sold a total of 1,005,431 men's watch bracelets, 45.5% of which, or 493,593, were the patented TWIST–O–FLEX and Kingsway bracelets (Plaintiffs' Exhibit 34). Speidel had an increase in sales of men's bracelets of 75% in the 1959–1960 period and this increase was due almost entirely to the increase in sales of the patented Stiegele constructions.

33. Rodi & Wienenberger, a concern located in Pforzheim, Germany, owns all foreign patents for the Stiegele invention and it pays Stiegele royalties thereunder. Since 1952 it has been making a bracelet called "FIX-O-FLEX" (Plaintiffs' Exhibit 36), which is identical to the Kingsway construction. It has sold this bracelet throughout the world except for the United States and its commercial success has been extensive.

34. The Stiegele patent has been respected by all United States manufacturers except Forstner, Inc., who was sued, and upon advice of counsel, took a consent judgment on March 27, 1956. Since March 27, 1956, all the infringers have been importers who imported the bracelets from Japan.

35. The top links of the design Kingsway bracelet (Plaintiffs' Exhibits 2 and 2–B), when viewed from the top, form a center row of highly polished rectangles and outer rows of finely knurled rectangles at either side, and the resultant watch bracelet has a distinctive, non-functional physical appearance.

36. From May or June of 1956, to January 1, 1958, Kingsway Co. sold 96,-738 design Kingsway bracelets to purchasers in the United States (Plaintiffs' Exhibit 3–C), its receipts therefor were $157,365, and sales to Arizona purchasers were substantial. Seventeen Phoenix retail jewelers were carrying Kingsway bracelets by January 1, 1959. By July 1, 1958, the distinctive, non-functional, physical appearance of the design Kingsway bracelet had acquired generally in the market a special significance or sec-

ondary meaning, indicating a watch bracelet of long life and high quality which originated from a single source, namely, Kingsway Co.

37. On July 29, 1958, Bentley & Schibelle made its first sale of LAMP bracelets and this sale was to Langert Bros. The LAMP bracelets are manufactured in Japan by Japan Metalware Mfg. Co., Ltd., of Tokyo.

38. Bentley & Schibelle has sold the Nos. 909, 910, 918, 929, 701, 706 and 707 LAMP designs, some of which are shown in the chart attached to the Complaint marked Complaint Exhibit 3, a copy of which is in evidence as Plaintiffs' Exhibit 21. They are all of the same physical construction but have different ornamental designs of top links.

39. A No. 929 yellow anodized LAMP bracelet is in evidence as Plaintiffs' Exhibit 4 and a No. 929 stainless steel LAMP bracelet is in evidence as Plaintiffs' Exhibit 4–D. The physical appearance of the 929 LAMP bracelet is a copy or unprivileged imitation of the distinctive, non-functional physical appearance of the design Kingsway, it is likely to cause prospective purchasers to regard it as a design Kingsway, and the sale and exposure for sale thereof by Bentley & Schibelle have constituted acts of unfair competition.

40. The construction and operation of said seven LAMP bracelets is shown in the drawing, Plaintiffs' Exhibit 20, enlargements of which are reproduced on the big charts (Plaintiffs' Exhibits 25 and 26). The LAMP construction is like the construction shown in the Stiegele patent drawings and the construction of the Kingsway bracelet except:

A. The upper legs of opposite U-shaped members are rigidly and integrally connected together by metal to form double U-shaped members and consequently the LAMP connecting members are retained in the bracelets by such rigid connections, plus the springs, whereas in the Stiegele and Kingsway constructions the single U-shaped members are held in by the engagement between flanges on the springs and notches on the inner surface of the legs of the connecting members.

B. The flanges on the bottom wall of the top links and on the top wall of the bottom links are much shorter in the LAMP bracelet.

C. The length of the bracelet is adjusted by moving the vertical ends of the LAMP connecting members, together with a pair of tweezers, and then sliding either a top link or a bottom link off at right angles to the longitudinal center line of the bracelet so that the vertical bases of the U-shaped members pass through the gap between the flanges of the link.

41. The LAMP bracelet utilizes the same novel, unique construction to provide expansion and vertical, lateral and twisting flexibility as the Stiegele bracelet and, except for the way of adjusting the length, its use and operation are identical.

42. The LAMP bracelet contains every element and function described by claims 1, 2, and 5 to 9, inclusive, of the Stiegele patent and it infringes them for this reason.

43. Connecting the upper legs of opposite U-shaped members together to form one member does not avoid infringement because the resultant single member performs the duties of the two members in the same way to produce the same results as claimed for the two separate U-shaped members.

44. The elements of the LAMP bracelet perform substantially the same functions in substantially the same way to obtain the same results as the elements described by claims 8 and 9 of the Stiegele patent and consequently, the LAMP bracelet embodies the inventions of these claims even if the term "U-shaped members" does not literally describe the shape of the LAMP connecting members.

45. Bentley & Schibelle has sold or otherwise disposed of 237 dozen infringing LAMP bracelets in this country and it has none remaining in stock.

46. Damages to plaintiffs are found as $6.00 per dozen or 50¢ per bracelet, of which 3¢ per bracelet represents the royalty which would have been payable to Mr. Stiegele if Speidel had made the infringing bracelets, 7¢ per bracelet represents roughly the profit Speidel would have made and 40¢ per bracelet represents roughly the profit Kingsway Company would have made if it had sold the infringing bracelets. The damages thus computed amount to $1,422.00.

47. In view of the facts and circumstances of this case, the damages found under finding 46 are increased to $2,000.00 under the provisions of 35 U.S.C.A. § 284, and the judgment shall award plaintiffs damages totalling $2,000.00, with interest from the date of entry of the judgment.

48. No award of damages for unfair competition is made.

49. Wilful infringement is not found and plaintiffs' request for the award of reasonable attorneys' fees pursuant to 35 U.S.C.A. § 285, is denied.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction of the parties and of the subject matter of both causes of action.

2. United States patent 2,689,450, issued to the plaintiff, Karl E. Stiegele, September 21, 1954, is owned by him and plaintiff, Speidel Corporation, is the exclusive licensee under it.

3. Claims 1, 2, and 5 to 9, inclusive, of said Stiegele patent are valid and Bentley & Schibelle Trading Co. has infringed each of said claims by using, selling and exposing for sale and by actively inducing others to use, sell and expose for sale LAMP bracelets of the construction shown in plaintiffs' Exhibit 20.

4. Bentley & Schibelle Trading Co. has competed unfairly with plaintiffs, Speidel Corporation and Kingsway Company, by selling and exposing for sale and actively inducing others to sell and expose for sale No. 929 LAMP bracelets, the physical appearance of which is a copy or unprivileged imitation of the distinctive, non-functional, physical appearance of plaintiffs' design Kingsway bracelet.

5. A final judgment shall be entered permanently restraining and enjoining Bentley & Schibelle Trading Co., its officers, agents, servants and successors, from further acts of unfair competition and of infringement of said Stiegele patent, and awarding damages of $2,000.00 to plaintiffs, plus their taxable costs and disbursements, in this case in an amount to be taxed by the Clerk.

Let judgment be entered accordingly.